IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CELESTE AMOS, et al.,<br><br>Plaintiffs,<br><br><br><br>vs.<br><br><br><br>W.L. PLASTICS, INC., a Delaware corporation,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO BIFURCATE ISSUES OF LIABILITY AND DAMAGES, DENYING DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF BANDING AND INTERIOR CHOCKING, DENYING DEFENDANT'S MOTION IN LIMINE TO EXCLUDE TESTIMONY OF EXPERT WITNESS RICHARD GILL, GRANTING PLAINTIFFS' MOTION IN LIMINE REGARDING COMMON LAW MARRIAGE, AND GRANTING PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF MARIJUANA USE<br><br><br><br>Case No. 2:07-CV-49 TS |

This matter is before the Court on the following motions: (1) Defendant's Motion to Bifurcate Issues of Liability and Damages; (2) Defendant's Motion in Limine to Exclude Evidence of Banding and Interior Chocking; (3) Defendant's Motion in Limine to Exclude

1

Testimony of Expert Witness Richard Gill; (4) Plaintiff's Motion in Limine Regarding Common Law Marriage; and (5) Plaintiff's Motion in Limine to Exclude Evidence of Marijuana Use. Each Motion will be discussed separately below.

I. BACKGROUND

On or about June 12, 2005, the decedent, Josh Amos, was transporting large high-density plastic pipes that were manufactured and loaded by Defendant. Plaintiffs assert that the pipes were not properly banded and chocked on the inside to prevent rolling. When the pipes were being unloaded, one of the pipes fell off the truck and landed on the decedent. As a result, Mr. Amos was left in a comatose, vegetative state from June 13, 2005, to October 9, 2006, when he died of his injuries.

Plaintiffs, the decedent's wife, children, and mother, brought this action alleging that Defendant was negligent. Plaintiffs allege that Defendant proximately caused a brain stem injury to the decedent, economic and non-economic damages for pain and suffering for sixteen months, medical expenses, loss of income, funeral and burial expenses, and loss of companionship.

II. DEFENDANT'S MOTION TO BIFURCATE ISSUES OF LIABILITY AND DAMAGES

Courts may, "[f]or convenience, to avoid prejudice, or to expedite and economize . . . order a separate trial of one or more separate . . . claims."[1] As this Court has noted,

> [a] trial court has broad discretion in any decision relating to bifurcation. However, the presumption is that the plaintiff, in a typical case, should be allowed to present her case in the order she chooses. The burden is on the defendant to convince the court that a separate trial is proper in light of the general principle that a single trial tends to lessen the delay, expense and inconvenience to all parties.[2]

---

[1] Fed.R.Civ.P. 42(b).

[2] *Sensitron, Inc. v. Wallace*, 504 F.Supp. 2d 1180, 1186 (D. Utah 2007).

To determine whether bifurcation is proper, a court should consider the following factors: "(1) judicial economy, (2) convenience to the parties, (3) expedition, and (4) avoidance of prejudice and confusion."[3]

There are competing arguments as to the first three factors. Defendant argues that bifurcation will promote these factors. In a negligence action, before damages can be awarded, liability must be found. Defendant asserts, and Plaintiffs do not counter this assertion, that the issues of liability and damages in this case are separate and distinct issues. Defendant argues that if liability is not found, the Court, the parties, and the jury will not have to expend additional resources on the issue of damages, thus promoting the factors of judicial economy, convenience, and expedition. Plaintiffs, on the other hand, argue that bifurcation will not be faster, less expensive, or more convenient to the parties. Rather, they argue that the general rule of having one trial will better promote these factors.

Turning to the issue of prejudice, Defendant argues that it will be prejudiced if Plaintiffs are able to present emotionally charged evidence concerning damages before liability is found. Defendant argues that there is a risk that the jury may be improperly influenced by an emotional response to Plaintiffs' damages evidence. Courts have recognized "that introduction of evidence offered only to prove damages poses a substantial risk of impairing the jury's objectivity on the liability issue in [a] case."[4] Plaintiffs argue that they will be prejudiced by bifurcation because it will result in a "sterilization" of their case. Plaintiffs further argue that they will be prejudiced by

---

[3] *Id*.

[4] *Zofcin v. Dean*, 144 F.R.D. 203, 205 (S.D.N.Y. 1992).

the possibility of having to wait for a second trial date on damages, and possible appeal, if they succeed during the liability phase.

Considering these factors here, the Court finds bifurcation to be appropriate. As set out by Defendant, if no liability is found, judicial economy, convenience, and expediency are served by bifurcation. Any concern that Plaintiffs may have about delay can be minimized by having the same jury consider damages immediately after liability, if any, is found. After all, "even when a court decides to bifurcate a trial into separate phases, the same jury should ordinarily hear both phases."[5]

The Court further finds that Defendant has legitimate concerns that the jury may be improperly influenced because of emotional evidence on damages. Because the evidence concerning Plaintiffs' damages is distinct from the evidence relating to liability, there is little need to discuss the evidence relating to damages in order to find liability. The Court also finds that separate phases for liability and damages will not result in a complete sterilization of Plaintiffs' case. It will simply limit the amount of emotional evidence concerning damages admitted during the liability phase. Further, any prejudice to Plaintiffs is less than the prejudice Defendant may face. Therefore, in order to alleviate the possible prejudice to Defendant, the Court finds that bifurcation is appropriate here. As indicated, however, the Court will conduct the damages phase, if necessary, immediately after liability is found and both phases of the trial will be heard by the same jury. Therefore, the Court will grant Defendant's Motion to Bifurcate Issues of Liability and Damages.

---

[5] *Trujillo v. Am. Family Mut. Ins. Co.*, 2009 WL 440638, *5 (D. Utah. Feb. 20, 2009).

### III. MOTION IN LIMINE TO EXCLUDE EVIDENCE OF BANDING AND INTERIOR CHOCKING

Mr. Amos was transporting large high-density plastic pipes that were manufactured and loaded by Defendant. Plaintiffs assert that the pipes were not properly banded and chocked on the inside to prevent rolling. As noted above, the evidence shows that there was no banding or interior chocking. When the pipes were being unloaded, one of the pipes fell off the truck and landed on the decedent. The decedent was left in a comatose, vegetative state from June 13, 2005, to October 9, 2006, when he died as a result of his injuries.

In its Motion in Limine, Defendant seeks to exclude evidence relating to banding and interior chocking. Defendant argues that such evidence is irrelevant under Rule 401 and unduly prejudicial under Rule 403. Specifically, Defendant argues that any banding would have been removed before the pipes were to be unloaded. Thus, Defendant argues, evidence on banding is irrelevant. Defendant further argues that the industry standard does not require interior chocking. Therefore, Defendant argues, that evidence is also irrelevant.

Federal Rule of Evidence 402 provides that only relevant evidence is admissible. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[6] Of course, "[t]he standard is not stringent; it is aimed at each 'brick' of evidence potentially making a wall and not every witness 'mak[ing] a home run.'"[7] Rule 403 excludes otherwise relevant evidence:

---

[6] Fed. R. Evid. 401.

[7] *United States v. Yazzie*, 188 F.3d 1178, 1189 (10th Cir. 1999) (quoting Fed. R. Evid. 401 advisory committee's note).

5

if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or delay, waste of time, or needless presentation of cumulative evidence.

As stated, Defendant argues that evidence of banding is irrelevant because the bands would have to be removed before unloading. Plaintiffs, in response, argue that banding is the industry standard and that Defendant failed to band the pipes because it did not have the proper equipment to load banded pipes. Plaintiffs also dispute that the bands would have been removed prior to unloading. One of Plaintiffs' complaints is that Defendant did not have proper persuasion control; that is, Plaintiffs argue that Defendant failed to properly instruct those who were unloading the pipe. Plaintiffs argue that Defendant should have banded the pipe and should have instructed those who were unloading the pipe not to remove the banding before unloading.

Plaintiffs submit evidence that banding is the industry standard and that Defendants failed to band the pipes. "Evidence of a defendant's compliance [or non-compliance] with applicable industry standards in a tort case is both relevant and admissible for purposes of determining whether the defendant either breached, or satisfied, the duty of care it owed to an injured plaintiff."[8] However, evidence of compliance or non-compliance is not conclusive of the issue of due care.[9] Based on the industry standard and Defendant's alleged failure to comply therewith, the issue of banding is clearly relevant to the issue of whether Defendant exercised reasonable care. Whether or not the banding would have been removed and what effect proper banding would have had on the pipes are matters which are in dispute and are properly left to the jury.

---

[8] *Yampa Valley Elec. Ass'n, Inc. v. Telecky*, 862 P.2d 252, 257 (Colo. 1993).

[9] *Id*.

Further, the Court finds that the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice.

Defendant also argues that evidence of interior chocking is irrelevant because it is not the industry standard. Rather, Defendant argues, it is something that others in the industry do as an added safety measure. Plaintiffs argue that Defendant did not use interior chocks because they were unaware of that procedure.

Defendant's Motion is premised on the idea that the "industry standard" is the same as the "standard of care." This is not necessarily the case. "Evidence of the accepted customs and practices of a trade or industry does not conclusively establish the legal standard of care to which a party is held in a negligence action."[10] Stated another way "[w]hat usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not."[11] The fact that a person deviates from or conforms to an accepted custom or practice does not establish conclusively that the person was or was not negligent.[12] Therefore, the fact that interior chocking is not the industry standard does not mean that evidence that Defendant failed to do so is irrelevant to whether or not it breached the standard of care in this case. That evidence is clearly relevant and is not substantially outweighed by the danger of unfair prejudice. Therefore, the Court will deny Defendant's Motion in Limine to Exclude Evidence of Banding and Interior Chocking.

---

[10] 57A Am. Jur. 2d Negligence § 165.

[11] *Texas & Pacific R.R. Co. v. Behymer*, 189 U.S. 468, 470 (1903).

[12] *Anderson v. Malloy*, 700 F.2d 1208, 1212 (8th Cir. 1983).

## IV. MOTION IN LIMINE TO EXCLUDE TESTIMONY OF EXPERT WITNESS RICHARD GILL

Defendant seeks to exclude the testimony of Plaintiff's expert Richard Gill. Defendant argues that Dr. Gill's theory of duty is incapable of performance and should, therefore, be excluded under Rules 401, 402, and 403. Plaintiff argues that Dr. Gill's opinion is limited in that he will opine that Defendant breached the standard of care in three specific ways: (1) failing to band two pipes together; (2) failing to properly chock the pipes; and (3) failing to employ proper persuasion control.

Whether Defendant breached the standard of care is clearly relevant in a negligence action. The Court finds that Defendant has legitimate concerns about the scope and content of Dr. Gill's testimony. However, Plaintiffs assert that Dr. Gill's testimony will be limited to those three ways in which he believes Defendant violated the standard of care. If his testimony is so limited, his testimony is relevant and admissible.

Defendant also argues that Dr. Gill's testimony is prejudicial because it is not based on the industry standard. However, as discussed above, the industry standard is not necessarily the same as the standard of care in a tort case. Therefore, this argument must be rejected. Any further concerns that Defendant may have about Dr. Gill's testimony can be addressed by use of objections and cross-examination. Therefore, there is no need to completely exclude the testimony of Dr. Gill and Defendant's Motion will be denied.

## V. MOTION IN LIMINE REGARDING COMMON LAW MARRIAGE

On August 4, 2005, Plaintiff Celeste Hansen, now Celeste Amos, filed a petition in Utah state court seeking a declaration that she was the common law spouse of Josh Amos. On December 21, 2005, the state court entered an Order Declaring Common Law Marriage. In that

Order, the state court declared Celeste Hansen and Joshua Amos husband and wife beginning on January 1, 2000. On July 7, 2008, Defendant filed a Motion for Relief from Judgment in the state court seeking to set aside the marriage decree. The state court denied that Motion, stating that Defendant lacked standing. Defendant did not appeal that ruling. In this Court, Defendant sought discovery concerning the marriage. Magistrate Judge Wells denied Defendant's Motion to Compel, citing the previous state court order. Defendant did not file an objection to that ruling.

Plaintiffs seek to preclude any evidence concerning a common law marriage. Plaintiffs argue that such evidence is irrelevant, legally incorrect, in contravention of prior court orders, and unduly prejudicial. Defendant argues that the marriage decree is not entitled to full faith and credit, that the issue is relevant, and that there is no undue prejudice.

Under Utah law:

> A marriage which is not solemnized according to this chapter shall be legal and valid if a court or administrative order establishes that it arises out of a contract between a man and a woman who:
> (a) are of legal age and capable of giving consent;
> (b) are legally capable of entering a solemnized marriage under the provisions of this chapter;
> (c) have cohabited;
> (d) mutually assume marital rights, duties, and obligations; and
> (e) who hold themselves out as and have acquired a uniform and general reputation as husband and wife.[13]

As indicated by the language of the statue, a marriage under this provision is "legal and valid."

Federal courts must give to state court judgments "the same full faith and credit . . . as they have by law or usage in the courts of such State, Territory or Possession from which they

---

[13] Utah Code Ann. § 30-1-4.5(1).

are taken."[14] Accordingly, this Court must "ascertain what preclusive effect [Utah] would give its own decision" and give the decision the same preclusive effect here.[15]

Under Utah law, for claim preclusion to apply, three requirements must be met: (1) the subsequent action must involve the same parties, their privies, or their assigns as the first action, (2) the claim to be barred must have been brought or have been available in the first action, and (3) the first action must have produced a final judgment on the merits of the claim.[16] The four requirements of issue preclusion are as follows: (1) the party against whom issue preclusion is asserted must have been a party to or in privity with a party to the prior adjudication; (2) the issue decided in the prior adjudication must be identical to the one presented in the instant action; (3) the issue in the first action must have been completely, fully, and fairly litigated; and (4) the first suit must have resulted in a final judgment on the merits.[17]

Defendant argues that neither claim preclusion nor issue preclusion apply here. Defendant focuses on the fact that it was not a party to the state court action wherein the marriage decree was entered. It is true that Defendant was not a party to that proceeding, nor could it have been. However, Defendant is focusing on the wrong issue. While Defendant focuses on the fact that it was not part of the proceeding where the marriage decree was entered, Defendant ignores the fact that it was a party to the proceeding where it was determined that Defendant lacked standing to challenge the marriage. On the standing issue, the elements of

---

[14] 28 U.S.C. § 1738.

[15] *Fox v. Maulding*, 112 F.3d 453, 456 (10th Cir. 1997) (quotation omitted).

[16] *Brigham Young Univ. v. Tremco Consul., Inc.*, 110 P.3d 678, 686 (Utah 2005).

[17] *Id*.

issue preclusion have been met. Defendant was a party to that state court determination on its lack of standing. The issue decided there is the same issue raised in the instant action. That issue was fully and fairly litigated against Defendant. The state court's decision that Defendant lacked standing to challenge the marriage was a final decision. The same can be said of Magistrate Judge Wells' decision. Defendant did not appeal either of those decisions. The Court finds that those determinations are entitled to full faith and credit. Further, this Court has no ability to invalidate the marriage decree. While Defendant disclaims any intent to invalidate the marriage decree, this is exactly what it is attempting to do, though indirectly. Defendant will not be allowed to do indirectly what it cannot do directly.

The Court agrees that, in general, evidence concerning a person's status as an heir may be relevant. However, evidence concerning the common law marriage of Celeste and Josh Amos has little, if any, relevance where neither the Court, Defendant, or the jury is in a position to challenge the marriage decree. The Court further finds that presentation of evidence on that issue would be unduly prejudicial and would likely confuse the jury. Therefore, this evidence will be excluded under Rules 401, 402, and 403.

VI. MOTION IN LIMINE TO EXCLUDE EVIDENCE OF MARIJUANA USE

Plaintiffs seek to exclude any evidence of alleged marijuana use by Josh Amos. Plaintiffs argue that this evidence is irrelevant, lacks foundation, and is unduly prejudicial. Plaintiffs assert that Defendant's sole evidence regarding alleged marijuana use is a notation in the hospital record titled "Clinical Laboratory Report — FINAL DISCHARGE RESULTS." That report states: "URINE/FECES . . . THC Pos (Abn)." Plaintiffs argue that the same report contains several blood tests, which do not report the presence of THC. Plaintiffs also argue that the record does not contain any information regarding: the level of THC in Mr. Amos's system; how

11

long the THC had been in Mr. Amos's system; why no THC was reported in the blood tests; the fact that THC does not signify impairment; Mr. Amos's metabolic rate; what type of urine test was used at the hospital; whether any over-the-counter drugs that can create false positives were also present Mr. Amos's system; and the effect on a man of Mr. Amos's size of whatever amount of marijuana was consumed at whatever time it was, and how that effect would in any way relate to the circumstances of the accident. Plaintiffs also complain that Defendant has not identified an expert witness to discuss any of these issues.

Defendant counters that just a few days before the accident, Mr. Amos submitted to a drug test, which came back negative. Defendant has also presented some evidence from those who witnessed Mr. Amos on the day of the accident which suggests that he was acting strange. Defendant argues that no expert testimony is needed, that the evidence is relevant, and that it is not unduly prejudicial.

The first issue that must be determined is whether an expert is required to present this evidence. In Utah, expert testimony is not required when the evidence is within the common knowledge of the jurors.[18] Defendant argues that the effect of marijuana is within the common knowledge of jurors. Two cases from Connecticut, while not binding on this Court, are helpful in determining whether expert testimony should be required here.

In *State v. Clark*,[19] the Supreme Court of Connecticut addressed the ability of the jury to determine the effects of marijuana on a witness's ability to observe and relate events. In that case, a witness had smoked five marijuana cigarettes shortly before the incident to which he was

---

[18]*Collins v. Utah State Dev. Center*, 992 P.2d 492, 494 (Utah Ct. App. 1999).

[19]801 A.2d 718 (Conn. 2002).

a witness.[20] At trial, the court instructed the jury that, because there was no evidence as to what effect the marijuana may have had on the witness, the jury was not to speculate that he was or was not affected by it or how he was affected by it.[21] On appeal, the court concluded that this instruction was improper.

The court recognized that though jurors may not have firsthand knowledge regarding the effects of marijuana,

> because of its widespread use, many people know of the potential effects of marijuana, either through personal experience or through the experience of family members or friends. The ability to draw inferences about the impairing effects of marijuana, like alcohol, however, is based upon common knowledge, experience and common sense, not necessarily on personal experience.[22]

The court also noted that

> [t]he unfortunate prevalence of marijuana use, coupled with the substantial effort to educate all segments of the public regarding its dangers, underscores the reality that the likely effects of smoking five marijuana cigarettes in a short period of time before an incident are within the ken of the average juror.[23]

The Appellate Court of Connecticut recently addressed an issue similar to the issue raised in this case. *Deegan v. Simmons*,[24] arose from a motor vehicle accident. The defendant in that case allegedly tested positive for marijuana at the hospital after the accident.[25] The trial court

---

[20]*Id*. at 721.

[21]*Id*. at 723.

[22]*Id*. at 725-26.

[23]*Id*. at 726.

[24]918 A.2d 998 (Conn. App. Ct. 2007).

[25]*Id*. at 1005.

13

precluded plaintiffs from introducing "evidence of a laboratory report indicating an abnormal result in a test known as the cannabinoid screen."[26] On appeal, the court affirmed, stating:

> In the case at hand, the court correctly noted that there was no evidence that marijuana had been used prior to the accident and no evidence that Simmons was impaired while driving his vehicle. Without corroborating evidence, the laboratory report itself would not explain: (1) how long a cannabinoid substance stays in a person's system; (2) the amount of cannabinoid in Simmons' system at the time of the accident; (3) the relationship between cannabinoid and marijuana; (4) what other products might cause a positive result for a cannabinoid substance; (5) whether urine tests could produce a false positive result and, if so, how often; (6) the possibility for contamination of the sample; and the chain of custody of any sample. These are not subject areas within the common knowledge of the jury and yet each of these factors has evidentiary significance. Thus, the court correctly concluded that the laboratory report indicating an "abnormal result" for a cannabinoid screen was inadmissible absent explanatory expert opinion. Accordingly, the court did not abuse its discretion in excluding the laboratory report.[27]

The court distinguished this case from *State v. Clark*, noting that "*Clark* pertains to a situation in which drug use has been established, and the issue to be determined was the *effect* it had on the user."[28] Unlike *Clark*, there was no evidence that defendant "had used marijuana during any time period relevant to the timing of the accident."[29]

The court further found that the possible relevance of this evidence was outweighed by the danger of unfair prejudice and confusion of the issues.[30] The court noted that "[t]he report did not indicate that Simmons was under the influence of marijuana at the time of the accident,

---

[26]*Id*.

[27]*Id*. at 1006.

[28]*Id*.

[29]*Id*.

[30]*Id*. at 1007.

14

and there was no other evidence adduced at trial that would support a reasonable belief that Simmons was operating his vehicle while he was under the influence of any drug or controlled substance."[31] As a result, the court held "[t]o permit evidence of a laboratory result indicating an abnormal result for a cannabinoid, without any further explanation of that finding, would be highly prejudicial to the defendants" and would have likely confused the issues.[32]

      This case is more akin to *Deegan v. Simmons* than to *Clark*. Here, there is a notation in a medical document that Josh Amos's urine tested positive for THC. There is no evidence that Mr. Amos used marijuana or that he was somehow impaired. This is not a situation, like *State v. Clark*, where there is clear evidence of marijuana use and the only issue for the jury is what effect that use might have had on the person's ability to perceive and relate events. Rather, there is only a notation in the medical records showing a presence of THC in Mr. Amos' urine. While the effects of marijuana use may be common knowledge, the interpretation of this medical record and how the presence of THC may have impacted Mr. Amos's actions are certainly not. An expert would be required in order to provide any meaningful analysis. Without an expert, the jury would be left to speculate on the effect the presence of THC in Mr. Amos's urine may have had. According to Plaintiffs, Defendant has designated no such expert. Because there is apparently no witness to explain this notation in Mr. Amos' medical record, the Court finds that the notation has little relevance and any such relevance is substantially outweighed by the danger of unfair prejudice and confusion of the issues. Therefore, such evidence will be excluded.

---

[31]*Id*.

[32]*Id*.

## VII. CONCLUSION

It is therefore

ORDERED that Defendant's Motion to Bifurcate Issues of Liability and Damages (Docket No. 73) is GRANTED as set forth above. It is further

ORDERED that Defendant's Motion in Limine to Exclude Evidence of Banding and Interior Chocking (Docket No. 75) is DENIED. It is further

ORDERED that Defendant's Motion in Limine to Exclude Testimony of Expert Witness Richard Gill (Docket No. 77) is DENIED. It is further

ORDERED that Plaintiffs' Motion in Limine Regarding Common Law Marriage (Docket No. 97) is GRANTED. It is further

ORDERED that Plaintiffs' Motion in Limine to Exclude Evidence of Marijuana Use (Docket No. 100) is GRANTED.

DATED December 22, 2009.

BY THE COURT:

_____
TED STEWART
United States District Judge